**Emmett Willard WARD, Plaintiff In Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12233.**

Criminal Court of Appeals of Oklahoma.

Jan. 4, 1956.

Rehearing Denied Feb. 15, 1956.

John L. Ward, Jr., Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Emmett Willard Ward was charged by information filed in the court of common pleas of Tulsa County with the offense of unlawful possession of intoxicating liquor, was tried before the court, convicted, and punishment was fixed at 45 days imprisonment in the county jail, and a fine of $100 and costs.

The evidence developed that the officers obtained a large quantity of assorted brands of whisky, gin and vodka in the gasoline filling station and residential quarters searched.

On appeal the defendant presents but one question for review, and that being the

sufficiency of the description in the search warrant. The property searched was described as:

. . "A certain concrete block building, consisting of filling station and living quarters, situated on Lot 1, of Jennings Addition to Dawson, Tulsa County, State of Oklahoma, together with the curtilage thereof and the appurtenances thereunto belonging."

The issue was timely raised by way of a motion to suppress the evidence obtained by use of the search warrant in question.

It is argued by defendant that the search warrant did not describe a numbered street address, but actually employed an erroneous legal description. It is said that the legal description was incorrect in that the portion of the town of Dawson in which defendant's property was located had in truth and fact been for about two years incorporated into the city of Tulsa.

W. A. Lang, investigator in the county attorney's office, testified that he was familiar with the place searched. Said he:

"Obtaining or knowing the address, and knowing the location of the filling station at 7104 East Pine, knowing it is located on the northwest corner, I went to the assessor's office and obtained the legal description. It is on the search warrant here.

"Q. This description that appears on the search warrant is the same description you obtained from the assessor's office? A. Yes, sir."

Witness said that he was along when the search warrant was served. In addition to him there were present: Houston Johnson, Louis Downing and Forrest Castle.

Witness further testified that where he would be furnished a search warrant with legal description, that: "I would go to the county assessor's office and find the plat or the description it is located in, knowing that I would find the address."

On cross-examination witness said that Dawson was a community located on the north side of Tulsa, and that a portion of it had been incorporated within the city of Tulsa. The evidence further developed that Lot 1, Jennings Addition to Dawson, had been incorporated into the city of Tulsa, but so far as the record showed, it was still on the tax rolls simply as Lot 1, Jennings Addition to Dawson.

The effect of defendant's argument is that the legal description should have been "Lot 1, Jennings Addition to the City of Tulsa." Therefore, the defect urged is that "the officers would be unable to locate this address without the use of discretion on their part, or by reason of previous knowledge." Consequently, it is said that the description in the warrant was fatally defective. Defendant cites in support of his position the cases of Tucker v. State, 45 Okl.Cr. 68, 281 P. 818, and Champion v. State, 50 Okl.Cr. 392, 298 P. 303.

In the Tucker case it is held:

"The record discloses that, at the time charged, a constable and a federal prohibition officer procured a search warrant to search a building and premises at 1213 Sheridan avenue, in said county and state. It is not stated in the search warrant of what town, if any, Sheridan avenue is a part. The warrant in that particular is insufficient, under article 2, § 30, of the Bill of Rights."

In the Champion case it was held that:

"Warrant to search building at 'number First house west of John Kincaid's, facing south on Fifteenth Ave., at No. 2 N. W. Street,' in a certain county and state, not stating of what town, if any, Fifteenth avenue is part, held insufficient under article 2, § 30, Const., and refusal to suppress evidence obtained thereunder was error."

Counsel argues: "We deem these authorities to be in point in the instant case, and we feel that the requirement is made that when a legal description is given, describing lots and certain additions to be searched a warrant is insufficient and invalid which fails to designate the town in which the addition is a part."

■ From the above we find the settled principle that the town where a search is intended to take place must be set out in the search warrant. Otherwise, there might

621 at top right

be more than one town or city within a particular county having a street by the same name and with like numbers as set out in the search warrant, and there would be as much likelihood of a home being searched for contraband where there would be no basis for search and no intent to have searched, as for the place where there would be basis for search and where search was intended and sought.

■ The basis for exactness and care in cases as above is to avoid the chance of invading a wrong place of business or home. It is to keep sacred the rights guaranteed the citizen in our Bill of Rights, Okla.Const. Art. II, § 30.

■ Without doubt the more exact description in the within case would have been "Lot 1, Jennings Addition to Tulsa, formerly a part of the town of Dawson, Tulsa County, Oklahoma", in that the community of Dawson in large part had been incorporated in the city of Tulsa. However, the county assessor, from the evidence, still carried the legal description of the property in question as "Lot 1, Jennings Addition to Dawson, Tulsa County, Oklahoma." Using this legal description and referring to the maps and plats in the office of the county assessor, the evidence was that the street address and location of the property sought to be searched could readily be obtained. From the evidence in the case the annexation of the area in question had not in any way caused a change in the legal description of the property in question so far as appeared from the official plat. There was no chance of one by the use of the legal description in question entering property other than that intended. The use of the legal description in question did call for an examination of the maps and plats in the office of the county assessor, but this proposition has been considered in the case of McCarthy v. State, 91 Okl.Cr. 294, 218 P.2d 397, and McCarthy v. State, 96 Okl.Cr. 95, 249 P.2d 139. Under the first citation this court in the case said [91 Okl. Cr. 294, 218 P.2d 398]:

"An officer serving a search warrant may refer to maps, plats, etc., to obtain general information as to the general location of a piece of property, the particular location of which is specifically described in the warrant; and, he may rely on his own personal knowledge; and, he may call upon his knowledge and understanding in interpreting abbreviations in a specific description and resort to such aids will not render the search invalid where the property searched was that described in the warrant, and the property could actually be located from the description contained in the search warrant."

Another case, not exactly in point but analogous, is that of French v. Commonwealth, 222 Ky. 385, 300 S.W. 902, cited by the Attorney General, and where the premises were described as the Charlie French residence in the city of Waverly, Union County, but where in fact the Charlie French residence was 75 feet outside the city limits.

■ We find no sound basis for declaring the description in the search warrant in question insufficient to support the search, and must therefore conclude that the trial court did not err in overruling the motion to suppress.

The judgment appealed from is affirmed.

JONES, P. J., and BRETT, J., concur.

## On Motion for Rehearing

POWELL, Judge.

Counsel for defendant asserts that certain statutes determinative of the controlling issue in this case were not called to the attention of the court and were likewise overlooked by the court.

The statutes in question are Tit. 19 O. S.A. § 225 providing for the consolidation of the offices of register of deeds and county clerk, and Tit. 19 O.S.A. § 288, which reads:

"The register [of deeds] shall also keep a well-bound book in which shall be platted all maps of cities and towns, or additions to the same, cemeteries and other plats, required by law to be recorded within his county, together with description, acknowledgment

or other writing thereon, and file the original plat in his office. He shall index such plat book under appropriate headings in the plat book."

It is contended that the official plat is found only in the office of the county clerk, and hence the testimony of the officer that having the street address of the place to be searched he was thereby enabled to obtain the description now being questioned from plats in the office of the county tax assessor, was a description not to be relied on, was not the legal description, and was an erroneous description.

It is noted that 11 O.S. 1951 § 4, relating to consolidation of cities and towns, provides in part that "maps, plats, and effects of every name and nature * * *" of the two cities or towns shall become the property of the new consolidated city or town. Apparently there is no requirement as to replatting. As a practical matter there may be replatting. There is no evidence in this respect before the court.

■ As to the contention that "the records of the county assessor bear no official sanction", the attorney general in his response, points out that 68 O.S. 1951 §§ 15.51, 15.52, and 15.53, subdivision (c), expressly require the assessor to keep in his office land lists showing the description of all unplatted lands and the description of all platted lots in cities and towns, or additions thereto. Also that he is required to make up the tax rolls containing such descriptions, and after preparation such rolls are transferred to the treasurer's office and there become the permanent records in the office of the county treasurer.

The lot in question was, according to the evidence before this court, carried on the lists and rolls of the county assessor as Lot 1, in Jennings Addition to Dawson, even though said property had been annexed within the boundaries of the city of Tulsa.

■ Counsel had opportunity to show by proof in the trial court that there was a discrepancy between the records in the offices of the county clerk and the county assessor by showing that the plat in the office of the county clerk had been chang-

ed. The burden was on him to so show. Franklin v. State, Okl.Cr., 279 P.2d 1116. No such proof was offered, so that the question does not arise as to which record should prevail in case there might have been a discrepancy in the records of the county assessor's office and that of the county clerk as to the description in question. We must, therefore, assume that there was no discrepancy and that the description in the office of the county clerk was identical with the records in the office of the county assessor.

JONES, P. J., and BRETT, J., concur.